EXHIBIT B

**STATE OF NORTH CAROLINA**
**COUNTY OF WATAUGA**   FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

2020 OCT 26  A 9 42

FILE NO. 20 CVS **478**

TOWN OF BOONE, a North Carolina
municipal corporation,   WATAUGA CO, C §
                                           §
              Plaintiff,  BY_____ §
                                           §
vs.                                        §       **VERIFIED COMPLAINT**
                                           §
                                           §
THE TRAVELERS INDEMNITY        §
COMPANY, a Connecticut corporation,  §
                                           §
              Defendant.

---

Plaintiff Town of Boone brings this action to establish coverage under an insurance contract

issued by Defendant insurance company. Plaintiff, complaining of Defendant, alleges and says:

### The Parties

1.     Defendant The Travelers Indemnity Company is a Connecticut corporation duly

registered and licensed to do business in the State of North Carolina.

2.     Plaintiff Town of Boone is a municipal corporation duly organized under the laws

of North Carolina. The Town is located in Watauga County, North Carolina.

3.     The Boone Town Council has duly authorized this legal action.

### The Insurance Policy

4.     Plaintiff maintained commercial insurance through Defendant, including General

Liability/Professional Liability coverage (hereinafter, "the Policy"), from July 1, 2016 through

June 30, 2019.

5.     The Policy issued to Plaintiff by Defendant included Public Entity Management

Liability Coverage ("PEML") on a claims-made basis. The limits of insurance were $1 million

each wrongful act limit and $3 million aggregate.

1

6.      A true and correct copy of the Public Entity Management Liability Coverage Declarations and Coverage Form issued for Policy year July 1, 2017- June 30, 2018 is attached as **Exhibit A.**

7.      The PEML policy conditions and language were unchanged for each of the policy years that are or could be relevant to this lawsuit.

8.      The insuring agreement of the PEML coverage provides in relevant part as follows:

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of loss to which this insurance does not apply.

\* \* \* \*

b. This insurance applies to loss only if:

(1) The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";
(2) The "wrongful act" is committed in the "coverage territory";
(3) The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period; and
(4) A claim or "suit" by a person or organization that seeks damages because of the loss is first made or brought against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section VI - Extended Reporting Periods.

9.      "Wrongful act" is defined to mean "any act, error or omission."

10.     The "Retroactive Date" of the Policy is July 1, 2005.

11.     The claims and suits at issue in this Complaint were made or brought against the Town during the policy periods or during the Extended Reporting Periods.

2

## The Losses Incurred by the Town

12.     For decades, the Town of Boone has operated a water/sewer utility as authorized under state law.

13.     Also for decades (since at least approximately 1987), the Town imposed so-called "availability fees" upon development that placed new demand upon the Town's water/sewer system. A true and correct copy of the ordinance section imposing these fees and effective during the period of time relevant to this Complaint, Town Code § 50-113, is attached as **Exhibit B**.

14.     As described in Town Code § 50-113, availability fees were imposed on grounds that "customers who create additional demands for water and/or sewer service should fund the cost of constructing additional plant capacity required to meet these demands." Exhibit B, § 50-113(A).

15.     Accordingly, availability fees were imposed on all new development and expansion of existing development that placed new or additional demand upon the Town's water/sewer system. Exhibit B, § 50-113 (B).

16.     All collected availability fees were required to be deposited to the Town's Water Capital Reserve Fund and "earmarked for the construction of additional system capacity." Exhibit B, § 50-113(E).

17.     Collected availability fees were in fact used to pay for ordinary capital improvement projects to the water/sewer system and, in addition, for a new water intake facility and substantial water treatment facility upgrades that were completed by the Town in 2018 at a cost of approximately $42 million dollars.

18.     The Town imposed the availability fees on the belief that they were fully authorized and lawful under North Carolina law. Also called "impact fees" or "capacity fees," such fees were imposed for decades not only by the Town of Boone but by many other municipal water utilities throughout North Carolina.

3

19.    State law was understood to authorize such capacity fees, and legal commentators had pronounced or assumed their lawfulness.

20.    Indeed, in a decision issued on August 4, 2015, the North Carolina Court of Appeals upheld the validity of the fees in the face of a challenge brought by developers against the Town of Carthage. *Quality Built Homes Inc. v. Town of Carthage*, 776 S.E.2d 897 (N.C. Ct. App. 2015) .

21.    On further appeal, however, the North Carolina Supreme Court issued a decision on August 19, 2016 holding that such fees (which it termed "impact fees") were unlawful. *Quality Built Homes Inc. v. Town of Carthage*, 369 N.C. 15, 789 S.E.2d 454 (2016).

22.    After the Supreme Court issued its 2016 decision, there was further litigation as to whether the defendant municipality could assert an estoppel defense against the developer claimants based on acceptance of benefits and whether a ten-, three-, or one-year statute of limitations was applicable. Upon its further consideration of the case, the North Carolina Court of Appeals found that a 10-year statue of limitations applied and that the estoppel defense did not apply. *Quality Built Homes, Inc. v. Town of Carthage*, 795 S.E.2d 436 (N.C. Ct. App., Dec. 30, 2016). That decision also was appealed to the Supreme Court.

23.    In February 2018, three lawsuits were filed against the Town alleging that availability fees previously assessed under the Ordinance were unlawful and asserting claims for the amounts paid by the plaintiff-developers. These lawsuits were materially identical except as to the dates of the availability fee payments at issue and the amount of damages claimed. A true and correct copy of one of the lawsuits is attached hereto as **Exhibit C**.

24.    The Town presented these claims to Defendant for coverage. Defendant initially provided a defense of the lawsuits with a reservation of rights.

4

25.    Defendant's initial reservation of rights letter, dated April 9, 2018, is attached as **Exhibit D**. This reservation of rights letter did not deny that the claims at issue came within the PEML's basic Insurance Agreement as to coverage, but did suggest that various exclusions to coverage might apply.

26.    The Town (through the Town Attorney) objected to Defendant's reservation of rights by correspondence dated April 18, 2018. A true and correct copy of the aforesaid correspondence is attached hereto as **Exhibit E**.

27.    On May 11, 2018, the North Carolina Supreme Court issued a decision precluding use of an estoppel defense and applying a three-year statute of limitations. *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 813 S.E.2d 218 (2018). This decision meant that many of the claims that had been asserted against the Town were time-barred, but a number remained.

28.    On July 5, 2018, the Town sent a letter notifying Defendant that the Town intended to settle the cases that were not time-barred per the recommendation of counsel retained by Defendant to represent the Town. In this letter, the Town noted that the potential settlements raised the issue of the Defendant's duty to indemnify the Town for its (imminent) losses. The Town asserted that the losses were covered and argued against the applicability of the possible exclusions previously cited by Defendant. A true and correct copy of the aforesaid correspondence is attached hereto as **Exhibit F**.

29.    On July 24, 2018, Defendant sent the Town a letter addressing the Town's July 5 letter and purporting to "amend" its prior reservation of rights letter. A true and correct copy of the aforesaid correspondence is attached hereto as **Exhibit G**.

30.    In its July 24, 2018 letter, Defendant denied a duty to indemnify, claiming for the first time that the losses suffered by the Town were not covered because the claimants sought "equitable relief" – i.e., "restitution" – which supposedly did not constitute "damages."

5

31.     On August 2, 2018, the Town notified Defendant that it was discussing a settlement of the three filed claims. The settlement terms would be payment in full plus 6% interest. A true and correct copy of the aforesaid correspondence is attached hereto as **Exhibit H**.

32.     Defendant did not respond to the Town's August 2, 2018 notification of intended settlement.

33.     On August 30, 2018, the Town notified Defendant that it intended to settle all timely claims asserted against it, including one of the three lawsuits that had been filed as well as several other claims that had been asserted informally. The Town detailed these claims on a spreadsheet and stated "[W]e hereby give notice to Travelers that the Town will be settling these claims on the terms just stated, while reserving all rights as to coverage under the Traveler's policies." A true and correct copy of the aforesaid correspondence is attached hereto as **Exhibit I**.

34.     Defendant did not reply to the Town's aforesaid August 30, 2018 correspondence.

35.     On August 31, 2018, Defendant issued a "Closing Notice" to the Town. A true and correct copy of the aforesaid notice is attached as **Exhibit J**. No other notice of withdrawal or denial of coverage was provided.

36.     The Town subsequently settled timely claims for availability fees paid prior to the issuance of the Supreme Court's *Carthage* case for the full amounts claimed, plus interest, being a total of $115,476.46.

37.     The North Carolina General Assembly evidently did not agree – at least as a matter of policy – with the result of the Supreme Court's *Town of Carthage* decision. In July 2017, the General Assembly enacted a new law specifically authorizing municipalities to impose capacity fees (referred to as "system development fees" in the new legislation) for water/sewer service. Pursuant to this law, Session Law 2017-138 (H.B. 436), codified as N.C. General Statutes Chapter 162A, Article 8, the Town of Boone enacted a new provision imposing system development fees

6

in June 2018. The new capacity fees applied to any new or additional demand resulting from development taking place after August 23, 2017.

38. The outcome of the *Town of Carthage* case and the new system development fee regime authorized by the General Assembly was, in essence, that developers who were assessed availability (impact) fees and completed construction in the period of 2014 – 2016 enjoyed a windfall: the impact fees they had paid were returned to them, they were not subject to the new system development fees, and thus they never had to pay their fair share for the Town's infrastructure costs. Developers who developed projects before that 2014-2016 period and those completing development afterwards were, on the other hand, subject to either the prior availability fees or the new system development fees and thereby paid their fair share of the Town's water/system infrastructure cost.

39. By the same token, Town of Boone utility rate payers were effectively stuck with paying the freight for those developers who were able to avoid paying any water/sewer capacity fee for their developments. Those developers enjoyed water/sewer infrastructure without ever having to pay their fair share of the costs of the infrastructure. The burden would fall instead on all the other water/sewer ratepayers.

<u>The Town's Losses are Insured Losses under the Policy</u>

40. Under the Public Entity Management Liability coverage part ("PEML"), the Policy issued by Defendant to the Town provided coverage for loss "caused by a 'wrongful act' committed while conducting duties by or on behalf of you [the Town] or 'your boards.'" "Wrongful act" is defined in the PEML as "any act, error or omission."

41. The losses suffered by the Town as described herein meet all the requirements set forth at Section I.1. ("Insuring Agreement") of the PEML part of the Policy. Accordingly, there is coverage for the aforesaid losses.

7

42.     None of the exclusions set forth at Section I.2. of the PEML are applicable to the Town's losses as described herein.

43.     Accordingly, the Town is entitled to indemnification from Defendant for its losses, being approximately $ $115,476.46, plus attorney's fees incurred to achieve the settlements.

### CLAIMS and REQUESTS FOR RELIEF

44.     Defendant has breached its contract of insurance with Plaintiff Town of Boone by failing and refusing to indemnify the Town for its losses as described herein.

45.     Plaintiff Town of Boone is entitled to and prays for a judgment against Defendant for breach of contract and for indemnification under the Policy for the Town's losses as described herein, in an amount to be determined at trial of this matter.

**WHEREFORE,** Plaintiff Town of Boone prays:

(i)     That the Court declare that Plaintiff is entitled to insurance coverage as requested herein;

(ii)    That the Court enter judgment in favor of Plaintiff and against Defendant for such amount as will be determined at trial of this matter, together with pre- and post-judgment interest;

(iii)   That the Court order Defendant to pay the costs of this action; and

(iv)    That the Court order such other and further relief to Plaintiff as it deems just and proper.

THIS the 22ⁿᵈ day of October, 2020.

                                **MEADE LAW, PLLC**

                                BY: _____

                                Allison M. Meade
                                State Bar No. 34392
                                MEADE LAW, PLLC
                                PO Box 292
                                Boone, NC 28607
                                (828) 865-5555 (main)
                                ameade@meade-law.com

8

STATE OF NORTH CAROLINA

COUNTY OF WATAUGA

## VERIFICATION

I, John Ward, being first duly sworn, depose and say as follows:

I am the Town Manager of the Town of Boone and am duly authorized to make this

Verification. I have read the allegations set forth in the foregoing Verified Complaint, and the

allegations contained therein are true and accurate of my own knowledge, except as to matters

stated on information and belief and as to those matters, I believe them to be true.

_____
John A. Ward  III

Sworn to and subscribed before me this  15te  day of October, 2020.

| D Nicole Harmon |
|---|
| NOTARY PUBLIC |
| Watauga County, NC |
| My Commission Expires February 08, 2021 |

_____, Notary Public

My commission expires: 2821

CC: 000 D559

001

000 T:

01 I:

* M:

12621

15T47606

*2C002

*

# TRAVELERS

One Tower Square, Hartford, Connecticut 06183

**PUBLIC ENTITY MANAGEMENT LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** ZLP-15T47606-17-PB
**ISSUE DATE:** 07/21/17

## THIS COVERAGE IS PROVIDED ON A CLAIMS-MADE BASIS

**INSURING COMPANY:** THE TRAVELERS INDEMNITY COMPANY

**POLICY PERIOD:** From 07/01/17 to 07/01/18 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Public Entity Management Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1. COVERAGE AND LIMITS OF INSURANCE:**

| PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
| --- | --- |
| Aggregate Limit | $3,000,000 |
| Each Wrongful Act Limit | $1,000,000 |

**2. RETROACTIVE DATE:** 07/01/2005

**3. DEDUCTIBLE:**

Each Wrongful Act Deductible $10,000

**4. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

SEE IL T8 01


EXHIBIT A

CC: 000 D559

000 T: 001

011: 000 T:

* M: 011

12839 * M:

* 2 C 0 0 2 15747606

# PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Common Policy Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

The words "policy period" mean the Policy Period shown in the Declarations of this Coverage Part.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VII - Definitions.

## SECTION I — PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insured against any claim or "suit" seeking damages because of loss to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" or claim and settle any claim or "suit". But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

We will have no other obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments.

b. This insurance applies to loss only if:

(1) The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";

(2) The "wrongful act" is committed in the "coverage territory";

(3) The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period; and

(4) A claim or "suit" by a person or organization that seeks damages because of the loss is first made or brought against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section VI - Extended Reporting Periods.

c. A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought against any insured at the earlier of the following times:

(1) When we or any "described authorized person" first receives written notice of such claim or "suit", whichever is first; or

(2) When we first receive written notice from any insured of a specific "wrongful act" that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek damages because of loss caused by the same "wrongful act" or "related wrongful acts" will be deemed to have been first made or brought against any insured at the time the first of those claims or "suits" is first made or brought against any insured.

d. A claim or "suit" by a person or organization that seeks damages will

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 12 of 52

be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "wrongful act" only if that notice contains all of the following information:

(1) How, when and where the "wrongful act" was committed;

(2) The names and addresses of any persons or organizations sustaining loss, and the names and addresses of any witnesses;

(3) The nature and location of any loss caused by the "wrongful act"; and

(4) The names and addresses of each insured that committed the "wrongful act".

Notice to us that:

(1) All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "wrongful act"; or

(2) Any insured may in the future receive written notice of a "wrongful act", claim or "suit";

is not notice of a specific "wrongful act".

e. If no Retroactive Date is shown in the Declarations of this Coverage Part, the Retroactive Date will be deemed to be the first day of the policy period.

f. Each "wrongful act" in a series of "related wrongful acts" will be deemed to have been committed on the date the first "wrongful act" in that series is committed.

## 2. Exclusions

This insurance does not apply to:

a. **Boards, Commissions, Or Governmental Units Or Departments**

Loss arising out of any activities or operations of the following boards, commissions, or governmental units or departments:

(1) Airports;

(2) Electric or gas utilities;

(3) Health care facilities, including clinics, hospitals, nursing homes, rehabilitation facilities or blood banks;

(4) Housing authorities;

(5) Port authorities;

(6) Schools or school districts; or

(7) Transit authorities.

b. **Breach Of Contract**

Loss arising out of a breach of contract.

This exclusion does not apply to loss arising out of the breach of a mutual aid agreement.

c. **Claims Or Suits By Insureds Against Insureds**

Loss for which a claim is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

d. **Complaint Or Enforcement Action**

Loss arising out of any complaint, enforcement action, claim or "suit" brought by or on behalf of any federal, state or local governmental regulatory or enforcement agency against any insured.

e. **Contractual Liability**

Loss for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to loss for which the insured would have liability for damages without the contract or agreement.

f. **Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Acts Or Knowing Violations Of Rights Or Laws**

Loss arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act", or any knowing violation of rights or laws, committed:

(1) By the insured; or

(2) With the consent or knowledge of the insured.

This exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such "wrongful act" or knowing violation was committed:

(1) By that insured; or

(2) With the consent or knowledge of that insured.

g. **Debt Financing**

Loss arising out of any type of debt financing issued by you or on your behalf, including bonds, debentures, guarantees of debt or notes.

 © 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 13 of 52

CC: 000 0559

001 T: 000 011: 001

2 C O O 2 15T47606 12641 * M:

### h. Employee Benefit Plans

Loss arising out of the administration of, the conduct of any fiduciary duty for, or the performance of or failure to perform any act or obligation related to any actual or proposed:

(1) Benefit plan or trust;

(2) Stock option, stock subscription or stock ownership plan; or

(3) Compensation plan;

operated by you or on your behalf for the benefit of any current, former or prospective "employee" or "independent contractor".

### i. Employment—Related Practices

"Employment loss" to:

(1) A person arising out of a "wrongful employment practice offense"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of loss described in Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be held liable as an employer or in any other capacity; and

(2) Whether the insured may have any obligation to share damages with or repay someone else who must pay damages because of the loss.

### j. Injunctive Relief

Any loss, cost or expense arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

### k. Injury Or Damage

"Bodily injury", "property damage", "personal injury" or "advertising injury".

### l. Insurance

Loss arising out of the failure to obtain or maintain any type or amount of insurance, including any type of bond, self-insurance method or program, or any similar risk transfer or risk management method.

### m. Intellectual Property

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

(1) Copyright;

(2) Patent;

(3) Trade dress;

(4) Trade name;

(5) Trade secret;

(6) Trademark; or

(7) Other intellectual property rights or laws.

### n. Investments

Loss arising out of the purchase, sale, issuance or distribution of, or offer to purchase or sell, any debt or equity securities or other investments.

### o. Known Wrongful Acts

Loss arising out of any "wrongful act", including any part of "related wrongful acts", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

A "described authorized person" will be deemed to know about a "wrongful act" at the earliest time when such "described authorized person":

(1) Reports all, or any part, of the "wrongful act" to us or any provider of other insurance;

(2) Receives a written or verbal demand or claim for damages because of the "wrongful act"; or

(3) Becomes aware by any other means that all, or any part, of the "wrongful act" has been committed.

### p. Law Enforcement Activities Or Operations

Loss arising out of "law enforcement activities or operations".

This exclusion does not apply to harm to any of your current or former "independent contractors" in connection with their "independent contractor" status.

### q. Multiplied Damages

The portion of any multiplied damage award that exceeds the amount multiplied.




Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 14 of 52

**r. Network And Information Security Liability**

Loss arising out of a "network and information security wrongful act".

**s. Nuclear Energy**

Loss arising out of the "hazardous properties" of "nuclear material".

**t. Pollution**

Loss arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

**u. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order, or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**v. Professional Health Care Services**

Loss arising out of providing or failing to provide "professional health care services".

**w. Sexual Harassment**

Loss arising out of any:

(1) Unwelcome sexual advance;

(2) Request for any sexual favor; or

(3) Other verbal, visual or physical conduct of a sexual nature.

**x. Strikes, Riots, Demonstrations Or Civil Commotions**

Loss arising out of any strike, riot, protest, demonstration, lock-out or civil commotion.

**y. Taking Of Private Property For Public Use Or Benefit**

Loss arising out of the taking or controlling of private property for public use or benefit, including the diminution in value of such property, by condemnation, inverse condemnation, adverse possession, dedication by adverse use or any other method or proceeding.

**z. Taxes**

Loss arising out of the improper administration or collection of taxes, or loss that reflects any tax obligation.

**aa. Unlawful Personal Gains**

Loss arising out of any Insured's personal profit, advantage or compensation to which that Insured is not legally entitled.

**bb. Workers' Compensation And Similar Laws**

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim we are investigating, any claim or "suit" we settle or any claim or "suit" against an Insured we are defending:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We will not be the principal under these bonds, and we do not have to furnish these bonds.

3. All reasonable expenses incurred at our request by the insured who is an individual to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings of up to $500 a day by that individual because of time off from work.

4. All costs taxed against the insured in the "suit", but only for that part of the judgment we pay.

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance. If we do not pay part of the judgment for any reason other than it is more than the applicable limit of insurance, we will not pay any interest that accrues on that portion of the judgment.

© 2009 The Travelers Indemnity Company Includes copyrighted material of Insurance Services Office, Inc. with its permission.
PR T1 06 02 09

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 15 of 52

CC: 000 0559

001 T: 000 01 I: 01 * M: 12643 15747606 * 2 C 0 0 2

7. The cost of any required appeal, bond for any judgment that we appeal, but only for bond amounts for that part of the judgment that is for damages to which this insurance applies and which are within the applicable limit of insurance. We will pay, or reimburse the insured for, the cost of a higher appeal bond amount if we are required to do so under the law that applies. We will not be the principal under any appeal bond, and we do not have to furnish any appeal bond.

These payments will not reduce the limits of insurance.

Our duty to make such payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Common Policy Declarations as a public entity, you are an insured. "Your boards" are also insureds. Your lawfully elected or appointed officials, "executive officers" or directors are also insureds, but only with respect to their duties as your elected or appointed officials, "executive officers" or directors.

2. Each of the following is also an insured:

   a. Your "volunteer workers", but only while performing duties related to the conduct of your business, and your "employees", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

   b. Members of "your boards", but only for the conduct of their duties for you or for "your boards". "Employees" of "your boards" are also insureds, but only for work done within the scope of their employment by "your boards", or their performance of duties related to the conduct of the operations of "your boards".

   c. Any legal representative of an insured that has died, or become mentally incompetent, insolvent or bankrupt, but only with respect to duties as such. That representative will have all the rights and duties of such insured under this Coverage Part.

3. Any of your lawfully elected or appointed officials, "executive officers", directors or "employees", or any members of "your boards", appointed at your request to serve with an outside tax ex-

empt entity will be deemed to be acting within the scope of their duties for you.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations of this Coverage Part and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

   The limits of Insurance will not be reduced by the payment of the applicable deductible amount.

2. The Aggregate Limit is the most we will pay for the sum of all damages for the combined total of all claims or "suits" for loss.

   If no amount is shown for the Aggregate Limit in the Declarations of this Coverage Part, the Aggregate Limit will be the higher of the Each Wrongful Act Limit or $100,000.

3. Subject to Paragraph 2. above, the Each Wrongful Act Limit is the most we will pay for the sum of all damages for all claims or "suits" for loss caused by the same "wrongful act" or "related wrongful acts".

The limits of insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed to be part of the last preceding annual or remaining period for the purposes of determining the limits of insurance.

## SECTION IV – DEDUCTIBLE

1. The Each Wrongful Act Deductible shown in the Declarations of this Coverage Part and the rules below fix the amount of damages and "defense expenses" incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

   The Each Wrongful Act Deductible does not apply to payments we make under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 16 of 52

2. The Each Wrongful Act Deductible applies to all damages and "defense expenses" for all claims or "suits" for loss caused by the same "wrongful act" or "related wrongful acts".

3. The applicable limits of insurance will not be reduced by the amount of any damages or "defense expenses" within the deductible amount.

4. The terms of this policy, including those with respect to:

   a. Our right and duty with respect to the defense of claims or "suits"; and

   b. Your duties in the event of a "wrongful act", claim or "suit";

   apply irrespective of the application of the deductible amount.

5. If we settle a claim or "suit" for damages, or pay a judgment for damages awarded in a "suit", that are subject to a deductible, we may pay any part or all of the deductible amount. You will promptly reimburse us for such part of the deductible amount as we have paid.

6. If we pay "defense expenses" that are subject to a deductible, you will promptly reimburse us for such part of the deductible amount as we have paid.

7. If you do not reimburse us for a deductible amount that applies to damages or "defense expenses", and we are awarded the deductible amount we sought, or any part of that amount, in any legal proceeding against you, you agree to pay us the amount of the award and the following:

   a. "Our deductible recovery expenses"; and

   b. Interest, from the date of our notice of payment to you, on the deductible amount awarded to us.

## SECTION V – PUBLIC ENTITY MANAGEMENT LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of A Wrongful Act, Claim Or Suit

   a. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "wrongful act" was committed;

   (2) The names and addresses of any persons or organizations sustaining loss, and the names and addresses of any witnesses;

   (3) The nature and location of any loss caused by the "wrongful act"; and

   (4) The names and addresses of each insured that committed the "wrongful act".

   b. If a claim or "suit" is made or brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the claim or "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   e. The following provision applies to Paragraph a. above, but only for the purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph 1. or 2. of Section II – Who Is An Insured:

   Notice to us of such "wrongful act" must be given as soon as practicable only after the "wrongful act" is

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 17 of 52

CC: 000 D559

001 T: 001

0 1 I:

* M:

12645

* 2 C 0 0 2 15747606

known by you or any "described authorized person".

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. As used in this provision, an agreed settlement means a settlement and release of liability signed by us, by the insured and by the claimant or the claimant's legal representative.

### 4. Other Insurance

If valid and collectible other insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** Another insurance company;

**(ii)** Us or any of our affiliated insurance companies;

**(iii)** Any risk retention group;

**(iv)** Any self-insurance method or program, including any failure to buy insurance, or decision to not buy insurance, for any reason, in which case the insured will be deemed to be the provider of other insurance; or

**(v)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If any other insurance is also primary,

we will share with all that other insurance by the method described in Paragraph **c.** below.

#### b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to "your boards", members of "your boards" or "employees" of "your boards".

When this insurance is excess, we will have no duty to defend the insured against any claim or "suit" if any provider of other insurance has a duty to defend the insured against that claim or "suit". If no provider of other insurance defends, we will undertake to do so, but we will be entitled to the insured's rights against all those providers of other insurance.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all such other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each provider of insurance contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, the share of each provider of insurance is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all providers of insurance.

### 5. Premium Computation

We will compute all premiums for this Coverage Part in accordance with our rules and rates.

Case 5:20-cv-00189-KDB-DCK Document 1-2 Filed 12/01/20 Page 18 of 52

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

## 7. Separation Of Insureds

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured shown in the Common Policy Declarations, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover from others all or part of any payment we have made under this Coverage Part in connection with a claim or "suit", those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

**a.** First, we will reimburse any person or organization (including us or the insured) any amount that person or organization has paid in excess of the limits of insurance.

**b.** Then, if there is any amount remaining, we will retain an amount equal to the amount we have paid under this Coverage Part in connection with the claim or "suit".

**c.** Finally, if there is any amount remaining, we will pay that amount to the insured, including any amounts within any applicable deductible or self-insured retention.

If any amounts are recovered in enforcing those rights of recovery, reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses is based on the ratio of its amount recovered to the total amounts recovered by all such persons or organizations in enforcing such rights.

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of loss caused by a "wrongful act" committed subsequent to the execution of the contract or agreement.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Common Policy Declarations written notice of the nonrenewal not less than 30 days before the end of the policy period.

If such notice is mailed, proof of mailing will be sufficient proof of such notice.

## SECTION VI — EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if this Coverage Part is canceled or not renewed, or replaced or renewed by us with insurance that applies on other than a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims or "suits" for loss caused by a "wrongful act" committed before the end of the policy period and after the Retroactive Date.

   Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

   The Basic Extended Reporting Period does not apply to claims or "suits" that are covered under any future insurance

© 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 19 of 52

CC:: 000 D559

001 T:: 000 T:: 001

* M: 011 :: 0

12647

15T47606

*.2 C 0 0 2

you purchase, or that would be covered under such insurance but for the exhaustion of its applicable limit of insurance.

4. The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

5. A Supplemental Extended Reporting Period of 12 months is available, but only by an endorsement and for an extra charge. This supplemental period replaces the Basic Extended Reporting Period.

The Supplemental Extended Reporting Period will not go into effect unless we receive all of the following within 90 days after the end of the policy period and you have fulfilled all other duties, and complied with all other conditions and requirements, under this policy:

a. A written request from you to purchase the Supplemental Extended Reporting Period Endorsement;

b. Full payment of the earned premium for this policy;

c. Payment of the additional premium for the Supplemental Extended Reporting Period Endorsement; and

d. Repayment of any deductible you owe us under this policy.

We will determine the additional premium for that endorsement in accordance with our rules and rates. The additional premium will not exceed 75% of the annual premium for this Coverage Part.

This endorsement will set forth the terms, not inconsistent with this Section VI - Extended Reporting Periods, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims or "suits" first made or brought against any insured during such period is excess over any valid and collectible other insurance available under insurance in force after the Supplemental Extended Reporting Period starts.

6. The Supplemental Extended Reporting Period does not reinstate or increase the limits of insurance.

## SECTION VII – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers

or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Advertising injury" means injury, other than "personal injury", caused by one or more of the following offenses:

a. Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

b. Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

   (1) Appropriates a person's name, voice, photograph or likeness;

   (2) Unreasonably places a person in a false light; or

   (3) Discloses information about a person's private life; or

c. Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

3. "Authorized user" includes your customer, supplier or supporter.

4. "Bodily injury" means:

a. Physical harm, including sickness or disease, sustained by a person; or

b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

5. "Computer virus" means malicious code that is introduced through your web-site or "your computer or communications network". Once introduced, such code may destroy, alter, contaminate or de-

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 20 of 52

grade the integrity, quality or perform-ance of data of any computer applica-tion software, computer network, or computer operating system or related network.

6. "Coverage territory" means:

   a. The United States of America (includ-ing its territories and possessions), Puerto Rico and Canada;

   b. All other countries or jurisdictions in the world except the "prohibited area"; or

   c. International waters or airspace, unless the "wrongful act" is commit-ted in the course of travel or trans-portation to, from or within the "prohibited area";

   provided that the insured's responsibility to pay damages is determined in a "suit" on the merits brought in the terri-tory described in Paragraph a. above or in a settlement we agree to.

7. "Defense expenses":

   a. Means any of the following fees, costs or expenses which can be di-rectly allocated to a particular claim or "suit":

      (1) Fees of attorneys, or other au-thorized representatives where permitted, for legal services, whether by outside or staff repre-sentatives; or

      (2) Court, alternative dispute resolu-tion and other specific items of expense, whether incurred by an outside vendor or by one of our employees, including:

         (a) Expert testimony;

         (b) Autopsy;

         (c) Witnesses and summonses;

         (d) Copies of documents such as birth and death certificates and medical treatment records;

         (e) Arbitration fees;

         (f) Fees or costs for surveillance or other professional investi-gations which are conducted as part of handling of a claim or "suit"; and

         (g) Fees or costs for loss preven-tion and engineering personnel for services which are con-ducted as part of handling of a claim or "suit".

   b. Does not include:

      (1) Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses de-scribed in Paragraphs a.(1) and a.(2) above incurred while handling a claim or "suit"; or

      (2) Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for develop-ing and investigating a claim so that a determination can be made of the cause or extent of, or re-sponsibility for, the loss, includ-ing evaluation and settlement of covered claims.

8. "Described authorized person" means:

   a. Any of your elected or appointed of-ficials, "executive officers" or direc-tors;

   b. Any member of "your boards"; or

   c. Your risk manager, or any leader of your legal, finance, risk management or other department that is responsi-ble for insurance matters.

9. "Discrimination" means any violation of a person's rights with respect to:

   a. That person's race, color, national origin, religion, gender, marital status, age, sexual orientation, or physical or mental disability;

   b. Any other class or characteristic af-forded rights under any federal, state, or local law, rule, or regula-tion.

10. "Employee" includes a "leased worker". "Employee" does not include a prisoner employed by any insured.

11. "Employment loss" means:

    a. Employment-related harm to any of your current, former or prospective "employees";

    b. Harm to any of your current, former or prospective "volunteer workers" in connection with their "volunteer worker" status; or

    c. Harm to any of your current or for-mer "independent contractors" in connection with their "independent contractor" status.

12. "Executive officer" means a person holding any of the officer positions cre-ated by your charter, constitution, by-

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 21 of 52

CC:: 000 D558

000T: 001

01.I.: *N: 12649 *2C002 15747606

laws or any other similar governing document.

13. "Harassment" means any unwelcome sexual advance, request for any sexual favor, or other verbal, visual or physical conduct of a sexual or non-sexual nature, when such conduct:

a. Is connected to a decision affecting a person's job performance for you or a person's performance of duties related to the conduct of your business;

b. Interferes with a person's job performance for you or a person's performance of duties related to the conduct of your business; or

c. Creates an intimidating, hostile, or offensive working environment affecting a person's job performance for you or a person's performance of duties related to the conduct of your business.

14. "Hazardous properties" includes radioactive, toxic or explosive properties.

15. "Independent contractor" means any person who is not the insured's "employee" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

16. "Joint powers authority" means any organization formed by two or more public entities that have agreed in a contract or agreement to jointly exercise any power common to them.

17. "Law enforcement activities or operations";

a. Means any of the official activities or operations of your police department, sheriff agency or other public safety organization, other than a fire district or department, that enforces the law and protects persons or property; and

b. Includes:

(1) Ownership, maintenance or use of a premises that you own, rent or borrow in order to conduct such activities or operations;

(2) Ownership or operation of any of your jails, penal institutions or similar facilities;

(3) Providing first aid at the time of an accident, crime or medical emergency;

(4) Providing school security; and

(5) "Moonlighting".

18. "Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business.

19. "Moonlighting" means any secondary employment, or extra-duty assignment, approved by your police department, sheriff agency or other public safety organization that enforces the law and protects persons or property.

20. "Network and information security wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

a. Failure to prevent the transmission of a "computer virus".

b. Failure to provide any "authorized user" of your web-site or "your computer or communications network" with access to such website or such computer or communications network.

c. Failure to prevent unauthorized access to, or use of, electronic data containing private or confidential information of others.

21. "Nuclear material" means any of the following materials defined in the Federal Atomic Energy Act or any of its amendments:

a. Source material;

b. Special nuclear material; or

c. By-product material.

22. "Our deductible recovery expenses" means all fees, costs and expenses incurred by us and our attorneys to recover a deductible amount in a legal proceeding brought by us against you. But if the deductible amount awarded to us is less than the full amount of the deductible payment we sought, "our deductible recovery expenses" will be a proportional amount based on the ratio of the deductible amount awarded to the full amount of the deductible payment we sought.

23. "Personal injury" means injury, other than "advertising injury", caused by one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

Case 5:20-cv-00189-KDB-DCK Document 1-2 Filed 12/01/20 Page 22 of 52

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

d. Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

e. Oral or written publication, including publication by electronic means, of material that:

(1) Appropriates a person's name, voice, photograph or likeness;

(2) Unreasonably places a person in a false light; or

(3) Discloses information about a person's private life.

24. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

25. "Professional health care services" includes:

a. Any medical, surgical, dental, laboratory, x-ray or nursing services; treatment, advice or instruction, or the related furnishing of food or beverages;

b. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

c. The handling or treatment of corpses, including autopsies, organ donations and other postmortem procedures;

d. Any health or therapeutic service, treatment, advice or instruction;

e. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

f. Any psychiatric, psychological or emotional counseling service, treatment, advice or instruction; or

g. The service by any person as a member of a formal accreditation, standards review, peer review or equivalent professional board or committee or member of any professional organization or committee.

26. "Prohibited area" means any country or jurisdiction while any trade sanction, embargo or similar regulation imposed by the United States of America applies to and prohibits the transaction of business with or within such country or jurisdiction.

27. "Property damage" means:

a. Physical damage to tangible property of others, including all resulting loss of use of that property; or

b. Loss of use of tangible property of others that is not physically damaged.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

28. "Related wrongful acts" means two or more "wrongful acts" that have as a common connection, tie or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes.

29. "Retaliatory action" includes any action directed at any person that is in response to that person's:

a. Exercising any legally afforded right;

b. Supporting in any way another person's exercise of any legally afforded right;

c. Participating in any strike or lockout;

d. Making any claim or "suit" against you or any other insured;

e. Testifying against you or any other insured in any legal proceeding;

f. Declining to perform any illegal or unethical act; or

g. Threatened or actual reporting of any illegal operations or activities actually or allegedly conducted within your business.

30. "Slogan" means a phrase that others use for the purpose of attracting attention in their advertising.

 © 2009 The Travelers Indemnity Company
Includes copyrighted material of Insurance Services Office, Inc. with its permission. PR T1 06 02 09

Case 5:20-cv-00189-KDB-DCK Document 1-2 Filed 12/01/20 Page 23 of 52

CC: 000 D559

000 T: 001

01 I: 000

* M: 12651 15747606 2 C O O 2 *

31. "Suit" means a civil proceeding that seeks damages. "Suit" includes:

   a. An arbitration proceeding that seeks damages and to which the insured must submit or submits with our consent; and

   b. Any other alternative dispute resolution proceeding that seeks damages and to which the insured submits with our consent.

32. "Title" means a name of a literary or artistic work.

33. "Volunteer worker" means a person, other than a prisoner, who:

   a. Is not acting within the scope of his or her employment as an "employee";

   b. Donates his or her work; and

   c. Is not paid a fee, salary or other compensation for that work.

34. "Wrongful act" means any act, error or omission.

35. "Wrongful employment practice offense" means any of the following offenses committed by or on behalf of an insured in the conduct of your business:

   a. "Discrimination" against any of your current, former or prospective "employees" or "volunteer workers";

   b. Wrongful termination of any of your current, former or prospective "employees" or "volunteer workers";

   c. "Harassment" of any of your current, former or prospective "employees" or "volunteer workers", or current or former "independent contractors";

   d. "Retaliatory action" against any or your current, former or prospective "employees" or "volunteer workers";

   e. Wrongful, excessive, or unfair discipline of any of your current, former or prospective "employees" or "volunteer workers";

   f. Wrongful hiring, supervision, or demotion of, or failure to promote, any of your current, former or prospective "employees" or "volunteer workers"; or

   g. Misrepresentation to, or defamation, libel, slander, disparagement or invasion of privacy of, any of your current, former or prospective "employees" or "volunteer workers".

36. "Your boards":

   a. Means any board, commission, or other governmental unit or department that:

     (1) Is under your jurisdiction; and

     (2) Is funded and operated as part of your total operating budget.

   b. Does not include any "joint powers authority".

37. "Your computer or communications network" means any computer or communications network that you rent, lease, license, or borrow from others, own or operate.

### § 50.113  AVAILABILITY FEE.

(A)  *Policy statement.* Each new demand on the town's water and/or sewer system uses up a portion of the remaining capacity of the town's water and/or sewer plants. Eventually, these new demands create the need to build additional plant capacity. This section codifies the town's policy that customers who create additional demands for water and/or sewer service should fund the cost of constructing additional plant capacity required to meet these demands.

(B)  *Applicability.* The availability fee shall be paid:

(1)  By all new customers and adjunct customers to the town's water and/or sewer system that place an additional demand on the system; and

(2)  By all existing customers and adjunct customers to the town's water and/or sewer system that place an additional demand on the system through an expansion or a modification of an existing structure or use.

(C)  *Measurement of new demand.* The new demand placed on the system by the customer shall be determined according to the schedule set forth in § 50.460, taking into account adjustments to recognize the presence of adjunct customers.

(D)  *Determination of the availability fee.*

(1)  The amount of the availability fee for the water system shall be determined by multiplying the customer's and/or adjunct customer's new demand in the terms of the predicted daily flow rate by the rate currently in effect per gallon.

(2)  The amount of the availability fee for the sewer system shall be determined by multiplying the customer's and/or adjunct customer's new demand in terms of the predicted daily flow rate by the rate currently in effect per gallon.

(E)  *Capital Reserve Fund.* All availability fees collected by the town from customers and/or adjunct customers that place additional demands on the town's water or sewer system shall be placed in the town's Water Reserve Fund and shall be earmarked for the construction of additional system capacity.

(F)  *Transferability.* The availability fee attaches to the real property or unit receiving water and/or sewer service. The availability fee paid by the customer and/or adjunct customer automatically transfers to the new owner at the time the property is sold or transferred. The availability fee cannot be transferred to a different lot, except when an owner combines adjoining lots for a single residential or commercial purpose.

(G)  *Credit.* Any property owner or customer who makes an off-site improvement to the town's water and/or sewer system infrastructure after 3-27-1997 shall be entitled to a credit toward the availability fee according to the conditions set forth below.

(1)  The credit only applies to "off-site" water and sewer infrastructure improvements, not "on-site" improvements. The term *ON-SITE IMPROVEMENTS* means those improvements made on the owner's property.

(2)  The credit only applies to the property for which the off-site improvements are made. The credit cannot be transferred to any other property.

(3)  This credit shall expire and become null and void three years after the completion of the off-site improvements.

EXHIBIT

B

(4) The property owner or customer may be granted a maximum credit of 50% for every dollar spent on off-site improvements to be applied towards the availability fee. This credit is based upon the property owner's or customer's investment in the town's water and/or sewer system infrastructure calculated at the market rate in effect at time of the investment. Expenses the property owner or customer is entitled to include within this credit are actual labor and material costs. However, the property owner or customer shall not include secondary or indirect costs such as engineering fees. The town will not give a credit for more than the existing market rate for labor and materials.

(5) It shall be the responsibility of the person claiming the credit to provide the town with all necessary documentation to prove the actual expenses incurred in making the off-site improvements.

(6) The availability fee credit will be based upon the availability fee rate in effect at the time an application for a credit is submitted.

(7) In no event shall any payment be made from the town to the property owner or customer for this credit.

(H) *Availability fee adjustment.*

(1) An availability fee adjustment may be granted by the Town Manager or his or her designee whenever strict enforcement of the provisions would result in a hardship to the customer or adjunct customer and if by granting the availability fee adjustment the intent of this section will be satisfied. A full or partial availability fee adjustment may be granted only when all of the following requirements are met:

(a) The party requesting the availability fee adjustment is an existing commercial customer of the town and has been in business since 2-25-1988 or has paid an availability fee;

(b) The commercial customer requesting the availability fee adjustment is relocating the business to another location within the town;

(c) The demand on the town's water and/or sewer system at the commercial customer's previous location will be substantially reduced or will be eliminated, causing the net effect of the move to have less impact on water and/or sewer use than would the opening of a similar new business;

(d) The intent of this section will be satisfied by the granting of the availability fee adjustment;

(e) The owner of the property at the customer's previous location gives the town a written release releasing all right, title and interest in the availability fee for which an availability fee adjustment is granted; and

(f) All of the conditions set forth herein are satisfied within two years after the customer closes its business at its pervious location.

(2) The credit given shall not be greater than the availability fee actually paid by the customer.

(3) (a) In the event an availability fee adjustment is granted, the dollar value of the credit shall be calculated by:

1. Using the customer's availability fee paid at the previous location; or

2. Using the customer's actual usage at the previous location.

(b) Further, if the customer disagrees with the manner in which the town calculates the demand at the new location, the customer may request that the town measure the actual usage at the new location for a 24-month period and re-calculate the availability fee based upon an average of the three highest months during that 24-month period. This re-calculation may result

in a refund to the customer or in a payment to the town.

(I) *Low income housing.* The town will grant a credit of 50% of the availability fee for the construction of low income housing when the construction is undertaken by a 501(C)(3) non-profit corporation and the housing will be occupied by persons or families with incomes at or below 60% of the area median income and there are contractual limitations on the free transferability of property, if it is to be owned or legal limitations on the conversion of the housing to use by persons or families with incomes higher than 60% of the area median income, if it is to be leased so that at a minimum the development or construction may only be used to provide housing to persons or families with incomes as described for a period of at least ten years.

(Ord. passed 6-21-2011; Ord. passed 7-17-2012)

FILED

STATE OF NORTH CAROLINA 2018 MAR 12 PM 3: 08 IN THE GENERAL COURT OF JUSTICE
                                                SUPERIOR COURT DIVISION
COUNTY OF WATAUGA WATAUGA COUNTY, C.S.C.       FILE NO. 18 CvS 112

POTEAT HOSPITALITY ASSOCIATES,
LLC,

                    Plaintiff,                  **COMPLAINT**

        v.

·TOWN OF BOONE,

                    Defendant.

COMES NOW Plaintiff, by and through counsel, complaining of Defendant, and alleging
and stating as follows:

1. Plaintiff is a limited liability company, organized and existing under and by virtue of the
   laws of the State of North Carolina, with its principal office located in Laurinburg, North
   Carolina.

2. Defendant is a municipality (hereinafter the "Town") located in Watauga County, North
   Carolina, incorporated and existing under and by virtue of the laws of the State of North
   Carolina.

3. Plaintiff initiated plans for a commercial development (hereinafter the "Building") within
   the corporate limits of the Town. In or about 2014, Plaintiff applied to the Town for
   water and sewer utility service at the Building.

4. On February 21, 2014, the Town sent an invoice to Plaintiff in amount of $68,235.75,
   describing the assessment as water and sewer Impact/Availability Fees (hereinafter the
   "Fees"). The invoice is attached hereto as Exhibit A and incorporated by reference as if
   fully set forth herein.

5. The Fees were assessed by the Town pursuant to Boone, North Carolina, Code of
   Ordinances, Section 50.113, which identifies such fees for purposes of future water use
   and future water system maintenance and expansion.

6. Pursuant to the aforementioned invoices, Plaintiff paid to the Town the amount of
   $13,647.16, or twenty percent (20%) of the amount invoiced, before any connection was

EXHIBIT
C

established to the Town's water and sewer system, as required by Town ordinance.

7. The ordinances under which the Town assessed the Fees are invalid, per the Opinion of the Supreme Court of North Carolina in *Quality Built Homes, Inc. v. Town of Carthage*, No. 315PA15, 2016.

8. The Town lacked the statutory authority, pursuant to the Public Enterprise Statutes, N.C.G.S. Section 160A-311-332, to impose these Fees for future use and/or future maintenance and expansion of its water and/or sewer systems.

9. Plaintiff is entitled to a full refund of the $13,647.16 that it paid towards the Fees, plus interest, costs and attorney's fees as allowed by law.

## PRAYERS FOR RELIEF

WHEREFORE Plaintiff prays the Court as follows:

1. That Plaintiff recover of the Town the amount of $13,647.16, plus interest at the highest legal rate from the date of payments by Plaintiff.

2. That Plaintiff recover its reasonable costs and attorney's fees incurred in prosecuting this action.

3. For such other and further relief as the Court deems just and proper.

THIS the 12th day of March, 2018.

DEAL, MOSELEY & SMITH, LLP
Attorneys for Plaintiff.
P.O. Box 311
Boone, NC 28607
Phone: (828) 264-4734
Fax: (828) 264-3314

By: *James M. Deal*
James M. Deal, Jr.
N.C. State Bar No. 6112

Exhibit A

per HRP
pay 10%
3/21/14



**Town of Boone**
PO Drawer 192
Boone, NC 28607
(828) 268-6200

# Invoice

| Account Number |
|---|
| 778 |
| **Invoice Number** |
| 003337 |
| **Invoice Date** |
| Feb 21, 2014 |
| **Payment Due Date** |
| |

POTEAT HOSPITALITY ASSOCIATES,LLC
(H. REGINALD POTEAT)
PO BOX 339
LAURINBURG, NC 28353.

| Description | Amount |
|---|---|
| IMPACT/AVAILABILITY FEES - WATER | 31,016.25 |
| IMPACT/AVAILABILITY FEES - SEWER | 37,219.50 |
| | |
| Comments: Hotel with 114 Regular Rooms (NO SUITES – No Stove or Kitchenette Sinks) at 8,208. Gpd. Pool at 48 Gpd, and One Office at 15 Gpd. No C. Credit. Total Charge Rate: 8,271. Gpd | |
| *Ordinance 11-01 explained and given. | |
| **Total Current Charges:** | 68,235.75 |

Town of Boone

Poteat Hospitality Associates, LLC

**008792**

| Date | Invoice No. | Invoice Date | Description | Amount |
|---|---|---|---|---|
| 3/21/2014 | 003337 | 3/21/2014 | Account 778 Poteat Hospitality Associates 114 Room Hotel 10% down | 6,823.58 |

Building

| Check Date | 3/21/2014 | Check Number | 008792 | Total | 6,823.58 |
|---|---|---|---|---|---|



**Brook Beardsley**
**Claim Professional**
**Public Sector**
**P.O. Box 650293**
**Dallas, Texas 75265**
**bbeardsl@travelers.com**
**Office 210-525-3699**
**Fax 877-860-5065**

April 9, 2018

**REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**
**7017 3380 0000 7438 3538**

Town of Boone
Attn. Terry Story
P.O. Box 192
Boone, NC 28607



EXHIBIT
D
tabbies

| | |
|---|---|
| Insured: | Town of Boone |
| Claimants: | Poteat Hospitality Associates, LLC |
| | Wilcox and Wright |
| | Harrod LLC |
| Claim Number: | FCW1878, FCW1881 and FCW1884 |
| Policy Number: | ZLP-15T47606-17-PB |
| Policy Period: | 07/01/17 – 07/01/18 |
| Loss Date: | On or about February 21, 2014, June 1, 2014 and February 24, 2015 |

Dear Mr. Story,

The Travelers Indemnity Company, hereinafter "Travelers", acknowledges receipt of the suit for damages on behalf of Poteat Hospitality Associates, LLC. This correspondence serves to reiterate our conversation relating to our coverage analysis after reviewing the terms of the Town's Public Entity Management Liability Coverage Form PR T1 06 02 09, policy number ZLP-15T47606-17-PB with effective dates of July 1, 2017 to July 1, 2018. Our analysis is not meant to suggest and/or imply any validity as to the allegations of Poteat Hospitality Associates, Wilcox and Wilcox, or Harrod LLC, rather is to address the potential coverage exceptions that may be applicable to these suits.

For reasons explained below, Travelers will continue with our investigation subject to a full reservation of rights, which includes the right to later deny coverage, the right to withdraw a defense and cease paying defense costs, and the right to file a declaratory judgment action for a court determination of coverage. Our coverage evaluation is based on the allegations of the suit as noted below and the general conditions of the policy.

## Allegations of the Suit

Poteat Hospitality Associates has alleged the Town sent them an invoice on or about February 21, 2014 asking to be paid $68,235.75 for impact/availability fees pursuant to ordinance 50.113 of the Town of Boone. The plaintiff paid $13,647.16 for the fees requested before a connection was made to the Town's water and sewer system.

Wilcox and Wright allege they paid $3712.50 for impact/availability fees pursuant to ordinance 50.113 of the Town of Boone at some point in 2014 before a connection was made to the Town's water and sewer system.

Harrod LLC has alleged the Town sent them an invoice on or about February 24, 2015 asking to be paid $528,561.00 for impact/availability fees pursuant to ordinance 50.113 of the Town of Boone. The plaintiff paid $105,122.00 for the fees requested before a connection was made to the Town's water and sewer system.

The plaintiffs allege pursuant to the opinion of the Supreme Court of North Carolina in Quality Homes, Inc. v Town of Carthage, the Town is statutorily prohibited from collecting these fees before a connection is made. They are seeking repayment from the Town for the fees they paid, plus interest and attorney's fees.

As part of our investigation, we have determined the Quality Homes case is pending before the court and there has not been a final ruling if these fees are prohibited, if they can be awarded attorney's fees, and if the statute of limitations is 3 years or 10 years.

To the extent the Plaintiffs can support their allegations, the policy excludes coverage for the taking of their property for public benefit, taxes, and unlawful personal gains by seeking payment for water and sewer connections that didn't exist yet.

## PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE FORM
## *CLAIMS MADE*

In order for coverage to be triggered under the PEML form, the claim would have to be first made or brought during the effective dates of the policy. Suit was first notice of Poteat Hospitality's intent to pursue a claim. The suit was served during the current policy period and the dates of loss of on or about February 21, 2014, June 1, 2014 and February 24, 2015 fall within the retroactive date of 7/1/05. To the extent the PEML policy were triggered, coverage would not be afforded for damages and/or costs for Taking of Private Property for Public Use or Benefit; Taxes; and/or Unlawful Personal Gains.

## SECTION I – PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE-CLAIMS MADE

1. **Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages. However, we will have no duty to defend the insurance against any claim or "suit" seeking damages because of loss to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" or claim and settle any claim or "suit.

   b.   This insurance applies to loss only if:

   (1)   The loss is caused by a "wrongful act" committed while conducting duties by or on behalf of you or "your boards";

   (2)   The "wrongful act" was not committed before the Retroactive Date shown in the Declarations of this Coverage Part or after the end of the policy period.

2. **Exclusions**

   **This insurance does not apply to:**

   y.   **Taking Of Private Property For Public Use Or Benefit**

   Loss arising out of the taking or controlling of private property for public use or benefit, including the diminution in value of such property, by condemnation, inverse condemnation, adverse possession, dedication by adverse or any other method or proceeding.

   z.   **Taxes**

   Loss arising out of the improper administration or collection of taxes, or loss that reflects any tax obligation.

   aa.   **Unlawful Personal Gains**

   Loss arising out of any insured's personal profit, advantage or compensation to which that insured is not legally entitled.

## SECTION VII- DEFINITIONS

34.   **"Wrongful act"** means any act, error, or omission.

### Travelers Does not Waive Any Right

Nothing in this letter should be construed as a waiver of Travelers' rights under any of the provisions of the Travelers' policy or any other defense that the Company may have. Travelers expressly reserves all of its rights to deny coverage for this claim on the basis of the above-stated reasons or any additional grounds.

The analysis of coverage outlined in this letter is not meant to be exhaustive. The policy of insurance includes additional provisions that may have a bearing on the question of coverage. By limiting policy, references to those cited herein, Travelers does not waive any other policy provisions. The insurance policy is incorporated herein by reference in its entirety, as if set forth in full.

We invite you to submit any documents, pleadings, amended pleadings or information that you feel may have a bearing on the coverage issues or our decision concerning this claim. If you now or in the future receive any information, which you believe will affect our coverage position, please send that information to us immediately for consideration.

Please feel free to give me a call if you have any questions or comments. Thank you.

Sincerely,


Brook Beardsley
Senior Technical Specialist
The Travelers Indemnity Company
Telephone: 210-525-3699
Fax: 877-860-5065
bbeardsl@travelers.com

CC:     Commercial Insurance Planning
        PO Box 9444
        Chapel Hill, NC 27515

        Scott Hart
        Sumrell, Sugg, Carmichael, Hicks & Hart, P.A. – via email

        Amanda Meade
        Town Attorney – via email



**MEADE LAW**
PLLC

PO Box 292
184 N. Water St., Suite 6,
Boone, NC 28607

(828) 865-5555
ameade@meade-law.com
www.meade-law.com

ALLISON M. MEADE, *Attorney and Counselor at Law & NCDRC Certified Superior Court Mediator*

April 18, 2018

*Via First Class Mail and Email*

Brook Beardsley
Senior Technical Specialist
The Travelers Indemnity Company
Telephone: 210-525-3699
Fax: 877-860-5065
bbeardsl@travelers.com

**Re:** ***Town of Boone, Insured; CLAIMS FCW1878, FCW1881 and FCW1884***
***Policy # ZLP-15T47606-17-PB***

Dear Ms. Beardsley,

I write with respect to your reservation of rights letter dated April 9, 2018 concerning coverage of your insured, Town of Boone, with respect to the above claims.

Please be advised that while the Town appreciates and accepts the defense that is being provided and shall continue to cooperate to the fullest extent possible to defend the claim in question, the Town does not agree with the coverage analysis set forth in your letter. The Town reserves all of its rights under all applicable insurance policies, and its acceptance of defense representation shall not be deemed as a waiver in any respect of any of the Town's rights thereunder.

Sincerely,

Allison M. Meade, Esq.
*Town Attorney*
*Town of Boone, North Carolina*

cc (via email)

John Ward, Town Manager
Terry Story, Town Risk officer



EXHIBIT
E



PO Box 292     (828) 865-5555
184 N. Water St., Suite 6,     ameade@meade-law.com
Boone, NC 28607     www.meade-law.com

---

**ALLISON M. MEADE,** *Attorney and Counselor at Law & NCDRC Certified Superior Court Mediator*

---

July 5, 2018

*Via First Class Mail and Email*

Brook Beardsley
Senior Technical Specialist
The Travelers Indemnity Company
Telephone: 210-525-3699
Fax: 877-860-5065
bbeardsl@travelers.com

> **Re:**   *Town of Boone, Insured; CLAIMS FCW1878, FCW1881 and FCW1884
> Policy # ZLP-15T47606-17-PB*

Dear Ms. Beardsley,

I write with respect to the coverage of your insured, Town of Boone, by Travelers ("the Company") with respect to the above claims. As you are aware, these claims involve the contention by the claimants that they were assessed illegal water and sewer "impact" or capacity fees that were collected as a condition of the Town providing water and sewer service to the claimants' new developments.

The Town is in a position to potentially settle one or more of these claims per the recommendation of attorney Scott Hart, the outside counsel that the Company has retained for the Town's defense. However, potential settlement raises the issue of the Company's duty to indemnify the Town for its losses.

Accordingly, I would like to discuss with you the Company's contention in its reservation of rights letter that coverage would be excluded for any losses under the Taking of Private Property for Public Use or Benefit, Taxes, and/or Unlawful Personal Gains exclusions. By their plain language, these exclusions do not appear to me to apply to these particular circumstances involving public utility user fees. First, the exclusion for Taking of Private Property by its terms clearly is intended to apply only to the taking of real estate interests (referring to "condemnation, inverse condemnation, adverse possession, dedication by adverse use or any other method or proceeding..."). Second, the exclusion for Taxes applies only to "the improper administration or collection of taxes, or loss that that reflects any tax obligation." Utility user fees are not "taxes" as that word is commonly understood either in common parlance or in legal contexts. Courts have repeatedly recognized a clear and legally significant distinction between taxes and fees. For just two recent examples, see *TABOR Foundation v. Colorado Bridge Enterprise*, CO Ct. App. No. 13CA1621, and *California Chamber of Commerce v. California Air Resources Board*, No. 34-2012-80001313 (CA Super. Ct.). Third, the exclusion for unlawful personal gains does not apply, as no individual person enjoyed any personal gains as a result of the fees at issue; the fees were

EXHIBIT

F

assessed and used solely to fund the Town's water and sewer facilities – i.e., for the benefit of the Town's utility customers.

If the Company is aware of authority supporting the contention that any of these three exclusions apply to utility fees such as are at issue in these cases, please advise so that I may consider them.

Sincerely,

*Allison M. Meade, Esq.*
*Town Attorney*
*Town of Boone, North Carolina*

cc (via email):

John Ward, Town Manager
Terry Story, Town Risk officer

2



**TRAVELERS**

Brook Beardsley
Claim Professional
Public Sector
P.O. Box 650293
Dallas, Texas 75265
bbeardsl@travelers.com
Office 281-606-7563
Fax 877-860-5065

July 24, 2018

**Email**

**-and-**

**REGISTERED MAIL RETURN RECEIPT REQUESTED**

Ms. Allison M. Meade
Meade Law PLLC
P.O. Box 292
184 N. Water St., Suite 6
Boone, NC 28607

| | |
|---|---|
| Insured: | Town of Boone, N.C. (the "Town") |
| Plaintiffs/Claim: | Poteat Hospitality Associates, LLC (Claim No. FCW1878) |
| | Wilcox and Wright (Claim No. FCW1881) |
| | Harrod LLC (Claim No. FCW1884) |
| Policy Number: | ZLP-15T47606-17-PB |
| Policy Period: | 07/01/2017 – 07/01/2018 |

Dear Ms. Meade,

The following is intended to address issues raised in your letter of July 5, 2018, and supplement The Travelers Indemnity Company's ("Travelers") Reservation of Rights letter of April 9, 2018. Upon your review of this Supplemental Reservation of Rights letter, let's visit and review how we might best cooperate to assist the Town in resolving the three lawsuits that seek a full refund of water and sewer impact fees the City charged to the Plaintiffs and which they paid.

As you know, and of significance, the Supreme Court of North Carolina issued a ruling in Quality Built Homes, Inc. v. Town of Carthage No. 315PA15, 2016 and a supplemental ruling on May 11, 2018. We understand that in large part based on the Town of Carthage ruling, the Town intends to proceed with a settlement conference or mediation in an effort to resolve the three developers' lawsuits referenced herein. We further appreciate that the Town is operating off an extension of time and thus has not yet answered or otherwise responded to the developers' lawsuits, at least while settlement negotiations remain likely.

**EXHIBIT**

G

### Reservation of Rights

Travelers will continue with our investigation subject to a full reservation of rights, which includes the right to later deny coverage, withdraw the defense we are currently offering and cease paying defense fees and costs, further supplement or amend our position on coverage, and file a declaratory judgment action for a court determination of coverage. To the extent what is set out in the April 9, 2018 Reservation of Rights differs from what is stated herein, this Supplemental Reservation of Rights letter shall control.

### The Lawsuits and Allegations

As you know, each lawsuit was filed in the General Court of Justice, Superior Court Division, on March 12, 2018, by the same attorney. Based on our review of the lawsuits, each Plaintiff is a development company that had initiated a plan for commercial development in the City. For the most part, the lawsuits are identical in terms of the overall allegations and requests for relief, namely "a full refund" of amounts paid for water and sewer impact fees (the "Fees"; also sometimes referred to as "Impact Fees"), along with interest, and costs and attorney's fees in prosecuting the action to secure a refund of those Fees.

The lawsuits differ in terms of how much the City assessed the developer, the amount the City "invoiced" the developer, the amount of Fees each developer paid, and the amount being sought as a "full refund." Each lawsuit refers to the "Fees" as "an assessment as water and sewer Impact/Availability Fees" (sometimes referred to herein as the "Impact Fees"; *see* ¶ 4 of each lawsuit).

Harrod/AP LLC ("Harrod") seeks a "full refund" of $105,122.00, representing 20% of the "invoiced amount" of $528,561.00. Harrod contends it paid the Fee of $105,122.00 "before any connection was established to the Town's water and sewer system…" (See *Harrod* lawsuit, ¶¶ 4, 6 and 9.)

Poteat Hospitality Assoc., LLC ("Poteat") seeks a "full refund" of $13,647.16, representing 20% of the "invoiced amount" of $68,235.75. Poteat contends it paid the Fee of $13,647.16 "before any connection was established to the Town's water and sewer system…" (See *Poteat* lawsuit, ¶¶ 4, 6 and 9.)

Wilcox & Wright, LLC ("Wilcox & Wright") seeks a "full refund" of $3,712.50. This particular lawsuit does not set out a specific "invoiced" amount. However, to the extent the amount represents 20% of the supposedly "invoiced amount" (as is true in the other two lawsuits), it appears the same would be approximately $18,800.00. Wilcox and Wright contends it paid Fees of $3,712.50 "before any connection was established to the Town's water and sewer system…" (See *Wilcox & Wright* lawsuit, ¶¶ 4, 6 and 9.)

Paragraph 7 of each lawsuit contends the "ordinances under which the Town assessed the Fees

are invalid." The allegations reference the Supreme Court of North Carolina case, *Quality Built Homes, Inc. v. Town of Carthage*. Plaintiffs allege the Town "lacked the statutory authority...to impose these Fees for future use and/or future maintenance and expansion of its water and/or sewer systems." (¶ 8) Each Plaintiff requests a "full refund" of Fees the City charged and which each developer paid in contravention to statutory authority and for which the City had allegedly invalid ordinances.

As discussed in our Reservation of Rights letter of April 9, 2018, and in relevant part, the insuring agreement of the Travelers' claims-made PEML ("Public Entity Management Liability Coverage Form"), provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any claim or "suit" seeking those damages.

### Plaintiffs Seek Equitable Relief, Not Damages, Which the PEML Does Not Cover

Plaintiffs demand a "full refund" of Fees that were invalidly imposed and which were based on "invalid" ordinances." The request for a refund of Impact Fees that were not allowed in the first place is a request restitution, which is a form of equitable relief, as opposed to legal relief or damages. Therefore, the insuring agreement of the PEML is not met and there is no coverage for the Plaintiffs' demand for a refund of Impact Fees. See Footnote I starting on the last page provided to me from our coverage counsel, which sets forth legal support for why there is no PEML coverage. (See Endnote starting on page 7.)[i]

The Plaintiffs also request interest and costs and attorney's fees, all which derive from water and sewer impact fees that the City wrongfully charged and collected without any statutory authority and based on invalid ordinances. The request for interest and attorney's fees is inextricably linked to the imposition of and collection of impact fees, which itself is not covered. Accordingly, there is no coverage for the interest or attorney's fees.

In relevant part, the "Supplementary Payments" part of the PEML states:

### SUPPLEMENTARY PAYMENTS

> We will pay, with respect to any claim we are investigating, any claim or "suit" we settle or any claim or "suit" against an insured we are defending:
>
> 1. All expenses we incur.
>
> ***
>
> 4. All costs taxed against the insured in the "suit", but only for that part of the judgment we pay.
>
> ***

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 40 of 52

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in the court that part of the judgment that is within the applicable limit of insurance. If we do not pay part of the judgment for any reason other than it is more than the applicable limit of insurance, we will not pay any interest that accrued on that portion of the judgment.

\*\*\*

The PEML obligates Travelers to pay costs taxed "but only for that part of the judgment we pay." Because what Plaintiffs seek, a "full refund" of Impact Fees, is itself not covered, such costs, if taxed, are likewise not covered. In similar fashion, prejudgment interest awarded may be covered but only on "that part of the judgment we pay." Since the amount sought to be refunded is not covered, nor is any prejudgment interest. Similarly, Travelers is not obligated to pay potential post judgment interest.

### *Additional Applicable PEML Exclusions*

Although the lawsuits do not set out a specific claim for injunctive relief, to the extent the Plaintiffs request the court order a refund of amounts wrongfully charged and collected, the PEML's injunctive relief exclusion (2.j.) appears to apply. It states:

**j. Injunctive Relief**

Any loss, cost or expense arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

### *Previously Asserted PEML Exclusions*

We appreciate the points you assert in terms of the taxes (2.z.) and takings (2.y.) exclusions we previously asserted. To this extent, and based on the facts and claims as currently pled, we withdraw these particular coverage defenses.

As to the previously asserted exclusion for "Unlawful Personal Gains" (PEML Exclusion 2.aa.), we adhere to that exclusion noting the language of the exclusion precludes loss arising out of "any insured's personal profit, advantage or compensation to which that insured is not legally entitled."

**aa. Unlawful Personal Gains**

Loss arising out of any insured's personal profit, advantage or compensation to which that insured is not legally entitled.

Page one of the PEML includes "insured" to mean "any person or organization qualifying as such under Section **II** – Who Is An Insured." Section II includes the Town as the designated entity in the Common Policy Declarations. Therefore, while we acknowledge that the word "personal" is used for the label of this particular exclusion, the wording of the exclusion applies to any insured, which includes the Town. It is the language of the exclusion, not its title, that controls whether the exclusion applies.

In addition, such a result is consistent with why the Plaintiffs' claims for a full refund of Impact Fees is not covered under the insuring agreement of the PEML. The allegations coupled with the ruling in Quality Built Homes reveal that the Impact Fees were not permissible. The Town was not legally entitled to charge or to keep the Fees.

### *No Other Policy Part Applies in Favor of Coverage*

We turn to the Commercial General Liability Coverage Form ("CGL"). The insuring agreement of the CGL (CG 00 01 10 01) as modified by endorsement CG D4 71 02 09 ("Amendment of Coverage B – Personal and Advertising Injury Liability", i.e., the "Coverage B Amendment") and other CGL endorsements does not apply in favor of coverage. In terms of Coverage A of the CGL, the lawsuit does not seek sums the Town would become legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" as the Policy defines those terms. Therefore, there is no CGL Coverage A available.

More specifically, there is no claim for "bodily injury" or "property damage" as defined by endorsements. Moreover, the Impact Fees imposed were not implemented accidentally and there was no accidental collection of the same, meaning there appears to be absence of an "occurrence" (defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"). Accordingly, Coverage A of the CGL does not apply.

The lawsuit does not assert a personal injury offense as defined in the Amendment of Coverage B. Therefore, CGL Coverage B does not apply in favor of coverage.

The Plaintiffs seek a refund of Impact Fees. To this extent, and as explained under the PEML discussion above, the Complaint thus does not seek damages but rather requests equitable relief (refund) of allegedly wrongly imposed and collected Impact Fees. The Plaintiffs want the Town to disgorge amounts the Town was not entitled to charge or keep. To this extent, the insuring agreement of the CGL does not apply. In addition, the CGL contains exclusions that might apply to exclude coverage if there was any to begin with, which we deny.

Our review leads us to conclude that no other policy part for the policy in effect July 1, 2017 to July 1, 2018 or under any policy in effect in prior or subsequent years applies in favor of coverage to the Town for the claims Plaintiffs assert in their respective lawsuits. Moreover, to

the extent Travelers issued an excess or umbrella policy to the Town, the same either follow the form of the underlying PEML (and CGL and other policy parts) and thus do not apply in favor of coverage or include policy language such as insuring agreements and/or exclusions that find application similar to what is discussed above.

### *Travelers Does not Waive Any Right*

Nothing in this letter should be construed as a waiver of Travelers' rights under any of the provisions of the Travelers' policy or any other defense that Travelers may have. Travelers expressly reserves all of its rights to deny coverage for this claim on the basis of the above-stated reasons or any additional grounds and reserves all rights as expressed herein.

The analysis of coverage outlined in this letter is not meant to be exhaustive. The policy includes additional provisions that may have a bearing on the question of coverage. By limiting policy references to those cited herein, Travelers does not waive any other policy provisions or coverage defenses that may apply under the law or in equity. The insurance policy is incorporated herein by reference in its entirety, as if set forth in full.

We invite you and the Town to submit any documents, pleadings, amended pleadings or information that you believe may bear on the coverage or our decision as discussed herein. If you now or in the future receive any information, which you believe will affect our coverage position, please send that information to us immediately for consideration.

Please feel free to give me a call if you have any questions or comments. Thank you.

Sincerely,

/s/ Brook Beardsley

Brook Beardsley
Senior Technical Specialist
The Travelers Indemnity Company
Telephone: 210-525-3699
Fax: 877-860-5065
bbeardsl@travelers.com

CC:    Commercial Insurance Planning
       PO Box 9444
       Chapel Hill, NC 27515

       Scott Hart
       Sumrell, Sugg, Carmichael, Hicks & Hart, P.A. – via email

Terry Story – via email

---

[i] Plaintiffs demand a "full refund" of Fees that were invalidly imposed and which were based on "invalid" ordinances." The request for a refund of Fees that were not allowed in the first place is a request restitution, which is a form of equitable relief, as opposed to legal relief or damages. Therefore, the insuring agreement of the PEML is not met and there is no coverage for the Plaintiffs' demand for a refund of Fees.

In Cincinnati Ins. Co. v. Milliken and Co., 857 F.2d 979, 981 (4th Cir. 1988), the 4th Circuit said that as a general rule, a liability policy of insurance (such as the Travelers PEML), does not extend coverage to a claim for *equitable relief. See also* Braswell v. Faircloth, 300 S.C. 338, 387 S.E.2d 707, 710-11 (1989). As a general rule, restitution or the restoration of ill-gotten gains, is not considered damages and is not covered under a liability policy. *See for example,* Windt, 3 Insurance Claims and Disputes § 11:6 (6th Ed. March 2018) ("Liability policies provide coverage for 'damages' owed by the insured; accordingly, equitable claims for restitution or disgorgement should not be covered.") "Restitution and disgorgement require payment of the defendant's ill-gotten gain, not compensation of the plaintiff's loss. This court has described restitution as an 'equitable remedy.'" *See* Ellett Bros. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001).

OneBeacon Am. Ins. Co. v. City of Granite City, No. 12-CV-00156-DRH-DGW, 2013 WL 556533, at *1 (S.D. Ill. Feb. 13, 2013) arose as a class action suit against the City of Granite. Plaintiffs (Funkhauser and other class members):

> ...sought a refund on behalf of each class member of a fee the City allegedly wrongfully collected... The fee at issue is alleged to be a processing fee that is required to be paid before the automobile owners can appear at the towing facility to pay the actual towing fee for the return of their vehicles. The underlying suit seeks a return of all monies for the wrongful assessment of the processing fee and an award of costs and other relief to which" the plaintiffs claimed entitlement. The OneBeacon court reviewed the 7th Circuit case Level 3 Commc'ns, Inc. v. Fed. Ins. Co., 272 F.3d 908 (7th Cir.2001) that involved "a nearly identical situation...

> In Level 3, the court held that, "a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain ..." *Id.* at 910. Level 3 was a securities fraud case where the plaintiffs sought the monetary difference between the value of their stock at time of trial and the price they had received from Level 3 when they sold. *Id.* The Seventh Circuit held that an insured party does not incur a loss within the meaning of the insurance contract when the party is compelled to return property it has stolen. *Id.* at 911.

> More than a decade later, the court reaffirmed its holding that restitution of monies wrongfully obtained is not a loss within the definition of an insurance policy. Ryerson Inc. v. Fed. Ins. Co., 676 F.3d 610 (7th Cir.2012).... The court stated, "[i]f disgorging such proceeds is included within the policy's definition of 'loss,' thieves could buy insurance against having to return money they stole." *Id.* at 612–13...

> In the case before this Court, the underlying suit seeks the return of a fee the City allegedly wrongfully charged Funkhauser and other similarly situated plaintiffs. As in both Level 3 and Ryerson, the underlying suit involves the potential "restoration of an ill-gotten gain." Level 3, 272 F.3d at 910. The Seventh Circuit has clearly held that this is

not a "loss" within the meaning of an insurance contract. *Id.* Therefore, the City's potential liability if it loses the underlying suit is not a loss for which it would be covered under OneBeacon's insurance policies.

A legal article written by Patricia A. Bronte in the Insurance Coverage Law Bulletin of July 2009 (entitled "Disgorge This: The Restitution Defense Meets the Duty to Defend"), discusses disgorgement and restitution principles. She examined Judge Posner's ruling in Level 3 noting the restitution defense "declares that a claim for restitution or disgorgement is uninsurable as a matter of law," and she noted that not all claims pertain to disgorgement or restitution. Moreover, not all plaintiffs frame their claims in this fashion. According to Bronte, "Judge Richard A. Posner of the Seventh Circuit Court of Appeals is widely credited with popularizing the restitution defense in his opinion in Level 3 where he noted as follows:

> The shareholders in the underlying suit were, in effect, seeking "to deprive the defendant of the net benefit of the unlawful act." The court accepted the insurer's analogy: "It's as if ... Level 3 had stolen cash from [the] shareholders and had been forced to return it and were now asking the insurance company to pick up the tab." *Id.* at 910. The settlement was restitutionary not because of the measure of damages sought or the wording of the complaint or settlement, but rather because of the essential nature of the shareholders' claim. In the most frequently quoted passage of the opinion, Judge Posner said: "An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return."

Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp., 531 F.3d 1339, 1345 (11th Cir. 2008), resulted in the court reviewing prior 11th Circuit cases as follows:

> In Waldrop v. Southern Co. Services, Inc., this court defined restitution generally as "an equitable remedy designed to cure unjust enrichment of the defendant *absent consideration of the plaintiff's losses.*" 24 F.3d 152, 158 (11th Cir.1994) [original emphasis]; *accord* FTC v. Verity Int'l., Ltd., 443 F.3d 48, 66–68 (2d Cir. 2006) (determining that "the appropriate measure for restitution is the benefit unjustly received by the defendants[,]" not the amount of the customer loss)...

Citing a California case, the New York appellate court in Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 188 A.D.2d 47, 55, 594 N.Y.S.2d 20 (1993) explained the concept this way:

> "It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies [citations omitted]." *(Bank of W. v Superior Ct.,* 2 Cal 4th 1254, 1266, 833 P2d 545, 553 [Sup Ct 1992].)

It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. In Bank of the West v. Superior Court, 10 Cal. Rptr. 538, 547, 550 (Cal. 1992), the Court observed that "insurance damages do not include costs incurred in disgorging money that has been wrongfully acquired. Id. at 549. The court reasoned that this result was justified because:

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 45 of 52

The public policy rationale that underlies [this holding] explicitly or implicitly, is this:
When the law requires a wrongdoer to disgorge money or property acquired through a
violation of law, to permit the wrongdoer to transmit the cost of disgorgement to an
insured would eliminate the incentive for obeying the law. Otherwise, the wrongdoer
would retain the proceeds of his illegal act, merely shifting the loss to an insurer.

Case 5:20-cv-00189-KDB-DCK   Document 1-2   Filed 12/01/20   Page 46 of 52

**Allison Meade (Meade Law)**

| | |
|---|---|
| **From:** | Allison Meade (Meade Law) <ameade@meade-law.com> |
| **Sent:** | Thursday, August 2, 2018 7:14 PM |
| **To:** | 'Beardsley,Brook E' |
| **Subject:** | RE: Town of Boone FCW1878/FCW1881/FCW1884 |

We are discussing settlement basically along the lines that the *Town of Carthage* case requires – full repayment of fee plus 6% interest. The case left us really no wiggle room…. We have minor disagreements with opposing counsel over application of the SOL that I will fill you in on if they prove relevant.

Allison

**From:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Sent:** Thursday, August 2, 2018 7:08 PM
**To:** Allison Meade (Meade Law) <ameade@meade-law.com>
**Subject:** RE: Town of Boone FCW1878/ FCW1881/FCW1884

Allison,

No problem. I understand. Has there been any further settlement discussions or movement in the cases?

Brook

**Brook Beardsley | Claim Professional**
Naperville Claim Center
PO Box 650293
Dallas, Texas 75265-0293
W: 281.606.7563   F: 877.860.5065

**TRAVELERS**

**From:** Allison Meade (Meade Law) [mailto:ameade@meade-law.com]
**Sent:** Thursday, August 02, 2018 6:04 PM
**To:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Subject:** RE: Town of Boone FCW1878/ FCW1881/FCW1884

Brook,
I appreciate your follow up. Unfortunately I just have not had time to study the response and research it to my satisfaction. Hopefully I will next week.
Best,

Allison

**From:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Sent:** Thursday, August 2, 2018 6:57 PM
**To:** Allison Meade (Meade Law) <ameade@meade-law.com>
**Subject:** RE: Town of Boone FCW1878/ FCW1881/FCW1884



EXHIBIT
H

7

Allison,

I wanted to check in and see if you had any questions or wanted to discuss my letter further.

Sincerely,

Brook

**Brook Beardsley | Claim Professional**
Naperville Claim Center
PO Box 650293
Dallas, Texas 75265-0293
W: 281.606.7563   F: 877.860.5065



**From:** Allison Meade (Meade Law) [mailto:ameade@meade-law.com]
**Sent:** Thursday, July 26, 2018 3:25 PM
**To:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Subject:** RE: Town of Boone FCW1878/ FCW1881/FCW1884

Thank you Brook.  I'll review and get back to you as soon as possible.

**From:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Sent:** Tuesday, July 24, 2018 12:30 PM
**To:** Allison Meade (Meade Law) <ameade@meade-law.com>; terry.story@townofboone.net
**Subject:** Town of Boone FCW1878/ FCW1881/FCW1884

Allison,

Thank you for your patience while I looked into the points raised in the attached letter dated 7/5/18.  Please see Traveler's attached response.  I am available to discuss the letter tomorrow before 10 am or after 1 pm Central time as well as anytime on Friday.

Sincerely,

Brook

**Brook Beardsley | Claim Professional**
Naperville Claim Center
PO Box 650293
Dallas, Texas 75265-0293
W: 281.606.7563   F: 877.860.5065

**TRAVELERS**

---

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

## Allison Meade (Meade Law)

| | |
|---|---|
| **From:** | Allison Meade (Meade Law) <ameade@meade-law.com> |
| **Sent:** | Thursday, August 30, 2018 3:50 PM |
| **To:** | 'Beardsley,Brook E' |
| **Subject:** | RE: Town of Boone FCW1878/FCW1881/FCW1884 |
| **Attachments:** | 8-21-18 impact fee claims.pdf |

Brook,

The Town is going to go ahead and pay all timely current claimants the amount of the allegedly illegal fees paid plus statutory interest (except the small $3712.50 claim, which we are still negotiating). The Harrod AP claim is one of the three filed cases (handled by Scott Hart) while the others have been asserted informally and not yet filed. The claims at issue are set forth in the attached spreadsheet, and we hereby give notice to Travelers that the Town will be settling these claims on the terms just stated, while reserving all rights as to coverage under the Traveler's policies.

I do not expect to receive direction as to whether the Town will assert a claim against Travelers until mid-September, at the earliest. I anticipate presenting my views of the potential legal claim to our Town Council at its meeting scheduled for September 18.

Best regards,

Allison M. Meade
*Town Attorney*
Town of Boone

 MEADE LAW
PLLC

PO Box 292
184 N. Water St., #6
Boone, NC 28607
Office: (828) 865-5555
Mobile: (828)773-2062
Fax: (828) 264-5637
Email: ameade@meade-law.com
Website: www.meade-law.com

**From:** Beardsley,Brook E <BBEARDSL@travelers.com>
**Sent:** Wednesday, August 29, 2018 10:39 AM
**To:** Allison Meade (Meade Law) <ameade@meade-law.com>
**Subject:** Town of Boone FCW1878/FCW1881/FCW1884

Allison,

I wanted to touch base and see if you wanted to discuss the letter I had sent and if there has been any sort of resolution to these cases.

Take care,

Brook

**EXHIBIT**

I

1

**Brook Beardsley | Claim Professional**
Naperville Claim Center
PO Box 650293
Dallas, Texas 75265-0293
W: 281.606.7563   F: 877.860.5065



This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

2

| Entity | Date of payment (per receipt) | Amount | Total with 6% interest compound annually thru 8/31/2018 |
|---|---|---|---|
| Harrod AP, LLC | 3/20/2015 | $ 52,561.00 | $ 64,288.65 |
| | 2/22/2016 | $ 52,561.00 | $ 60,911.78 |
| Clement Blowing Rock Rd., LLC (W. Oaks 34 Oak St.) | 12/31/2015 | $ 22,275.00 | $ 26,032.06 |
| Clement Blowing Rock Rd/Winkler | 8/6/2015 | $ 46,354.28 | $ 55,435.57 |
| The Standard at Boone, LLC | 12/16/2016 | $ 696,480.39 | $ 769,579.92 |
| Howard Street Ventures, LLC | 9/29/2016 | $ 24,035.55 | $ 26,884.89 |

# TRAVELERS J

The Travelers Indemnity Company
P.O. Box 650293
Dallas, TX 75265-0293

08/31/2018

**Terry Story**
**Town Of Boone**
**567 WEST KING STREET**
**Boone NC 28507**

## Closing Notice

Claim Number: 028-LR-FCW1884-M  Date of Loss: 02/24/2015  Closing Date: 08/31/2018
Account Name: Town Of Boone
Driver Name:
Insured Code:  15T47606ZLP001
Policy Number: ZLP      15T47606
Subsidiary:   Town Of Boone
Cmt #1 Name:  Harrodd LLC

Loss amounts - 001  Claimant(s):

| Coverage: | Claim: | Expense: |
|---|---|---|
| PROF | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
|  | $0.00 | $0.00 |
| **Total Payments:** | $0.00 | $0.00 |
| **Subrogation:** | $0.00 | 0.00% |
| **Other Recovery:** | $0.00 | |

For additional information, contact:
Brook Beardsley
Tech Spec

(281)606-7563



P0057T 8/13